IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APPLICATION AND AFFIDAVIT OF THE )<br>UNITED STATES OF AMERICA FOR AN )<br>ANTICIPRATORY SEARCH WARRANT )<br>OF ADDRESS 200 SOUTHMONT BOULEVARD,)<br>APARTMENT 5, JOHNSTOWN, PA 15905 ) | MAGISTRATE NO. 3: 21-142 MJ<br>**[UNDER SEAL]** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION
### UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Staci M. Johnson, being duly sworn, do hereby state the following:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a United States Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been so employed since August 2004. I am currently assigned to the Narcotics and Money Laundering Team at the USPIS's Pittsburgh, Pennsylvania field office. In this capacity, I am responsible for investigating the use of the United States Mails for the purpose of transporting controlled substances such as methamphetamine, heroin, fentanyl, fentanyl-related analogs, cocaine, and other controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) (manufacturing, distribution, or possession with the intent to manufacture or distribute a controlled substance), 843(b) (unlawful use of a communication facility in the commission of a crime), and 846 (drug conspiracy). In addition, I am responsible for investigating possible violation of 18 U.S.C. §§ 1956 and 1957 (money laundering). I have been involved in the investigation and discovery of drug contraband and drug proceeds on multiple occasions.

2.  I have been involved in the investigation and discovery of drug contraband and drug proceeds on multiple occasions. I have personally been the affiant for search warrants which have resulted in the discovery of controlled substances and drug proceeds. My current

assignment involves investigating the use of the U.S. Mails by drug traffickers, in which established drug package profiles, surveillance, and drug detection dogs, among other investigative tools, are utilized.

3. Experience and drug trafficking intelligence have demonstrated that Priority Mail Express is commonly used to transport drugs and drug proceeds because of its reliability and the time pressures it places on law enforcement agents to execute a successful controlled delivery.

4. This affidavit is made in support of an application under Rule 41 of Federal Rules of Criminal Procedure, for a warrant to search for and seize evidence, instrumentalities, contraband, and fruits of violations of Title 21, United States Code, Sections 841(a)(1) (manufacturing, distribution, or possession with the intent to manufacture or distribute a controlled substance), 843(b) (unlawful use of a communication facility in the commission of a crime) and 846 (drug conspiracy), from the address of 200 Southmont Boulevard, Johnstown, PA 15905 (hereinafter the "Target Location").

**TRAINING AND EXPERIENCE REGARDING DRUG TRAFFICKING OFFENSES**

5. The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other individuals, review of records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, this affidavit does not set forth each and every fact learned by me during the course of this investigation.

6. In a substantial number of residential search warrants executed in connection with the drug investigations in which I and fellow Postal Inspectors, FBI Special Agents, HSI Special

Agents, Pennsylvania State Police Troopers (PSP), and members of local drug task forces have been involved, the following kinds of drug-related evidence have typically been recovered from the residences of drug-traffickers:

- a) Controlled substances, such as marijuana, heroin, fentanyl, crack cocaine, powder cocaine and methamphetamine;
- b) Paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, mixers, heat-sealing devices, and dilutants such as mannitol, mannite, and Truvia®;
- c) Books, records, receipts, notes, ledgers, and other papers relating to the distribution of controlled substances;
- d) Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances;
- e) Cash, currency, and records relating to controlled substances income and expenditures of money and wealth, for example: money orders, wire transfers (Western Union), cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers, as well as precious metals such as gold and silver, and precious gems such as diamonds;
- f) Documents indicating travel in interstate and foreign commerce such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, telephone bills and rental car agreements;

    g) Electronic devices, such as computers, and mobile electronic communication devices, such as cellular telephones and "smart phones", electronic messaging equipment, such as tablets, pagers, telephones answering machines, and their tapes, electronic storage devices, such as GPS devices and portable media players, and other such mobile electronic devices that store data, as well as the content therein;

    h) Firearms and other dangerous weapons; and

    i) Photographs, in particular, photographs of co-conspirators, assets, and/or drugs.

    7. In addition, during the course of such residential searches, I and other agents have also found items of personal property that tend to identify the person(s) in the residence, as well as the occupancy, control, or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, utility and telephone bills, statements, identification documents, and keys to safe deposit boxes and storage facilities.

    8. Based upon my training and experience, as well as the knowledge and experience of other agents and police officers involved in this investigation, I am aware that it is generally a common practice for drug traffickers to store their drug inventory and drug-related paraphernalia (as described above) in their residences. Further, it is generally a common practice for drug traffickers to maintain in their residences records relating to their drug trafficking activities. Because drug traffickers in many instances will "front" (that is, sold on consignment) controlled substances to their clients, or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed. Such records will also be maintained close at hand so as to readily ascertain current balances. Often

drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier and the trafficker's dealer(s). Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them readily available in order to efficiently conduct their drug trafficking business.

9. In addition, I also am aware it is a generally common practice for traffickers to conceal at their residences large sums of money which represent the proceeds of drug sales or money to be used to purchase additional controlled substances. The large amounts of U.S. currency are necessary to maintain and finance their ongoing drug distribution business. In this connection and context, drug traffickers typically make use of wire transfers, cashier's checks and money orders to pay for controlled substances. Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in residences.

10. Based upon my training and experience, drug traffickers commonly have in their possession, that is, on their person or at their residence, firearms, including but not limited to pistols, revolvers, rifles, shotguns, machine guns and other weapons. I also am aware that, typically, drug traffickers possess these firearms and other dangerous weapons to protect their profits, supply of drugs, and themselves from others who might attempt to forcibly take the traffickers' profits and/or supply of drugs.

11. I am aware that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances; furthermore, I know that the aforementioned books,

records, receipts, notes, ledgers, etc. are generally maintained where the traffickers have easy and ready access to them, including in their residences and automobiles.

12. Further, I am aware that persons involved in drug trafficking conceal in their residences and automobiles, currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions, as well as evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from drug trafficking activities.

13. When drug traffickers amass proceeds from the sale of drugs, they often attempt to legitimize these profits, or otherwise conceal them from discovery by law enforcement officers. To accomplish these goals, drug traffickers often use different techniques, including but not limited to foreign and domestic banks and their attendant services; securities; cashier's checks; money drafts; letters of credit; brokerage houses; the purchase of real estate; as well as shell corporations and business fronts to conceal the true ownership and illegal source of the proceeds.

14. I am aware drug traffickers commonly maintain books or papers that reflect names, addresses and/or telephone numbers of their associates in the trafficking organization. Also, drug traffickers take or cause to be taken photographs of them, their associates, their property, and their product, and these photographs are usually maintained in their possession or residence.

15. I am also aware drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing drugs; and the paraphernalia would include, but are not limited to scales, plastic bags, cutting agents, and other devices used for packaging to aid in the

concealment of the drug for its distribution. These items are necessary for the drug trafficker to carry on their drug distribution operation.

16. Further, I am aware that drug traffickers often operate under assumed names, street names, or nicknames in order to conceal their true identities from law enforcement officers, and in so doing, acquire property, services, and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names. Also, they maintain documents of their false identities in their residences and automobiles, together with evidence of their true identities.

17. I have knowledge drug traffickers commonly conceal their activities from members of the public by transacting their business in a convert manner and frequently conducting their business during the nighttime hours when darkness helps conceal their activities. Further, it is highly unusual for individuals engaged in drug trafficking activities to associate in their businesses or social activities with others not engaged in the same drug trafficking activities.

18. I have knowledge that it is common for drug dealers to conceal contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence for their ready access and to conceal them from law enforcement authorities.

19. My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following:

    a) My own involvement in prior drug investigations and searches during my career as a law enforcement officer, as previously described;

    b) My involvement on a number of occasions in debriefing cooperating individuals in prior drug investigations, as well as what other agents and police officers have

advised me when relating the substance of their similar debriefings and the results of their own drug investigations;

c) Discussion with other members of the USPIS and law enforcement officers, both about the facts of this case in particular and about trafficking in general;

d) My training, experience and knowledge as well as my review of documents and evidence obtained during the investigation and information obtained from investigators of the USPIS, FBI, PSP, and HSI.

20. I make this Affidavit in support of an application for the issuance of an anticipatory search warrant for the premises located at 200 Southmont Boulevard Apartment 5, Johnstown, PA 15905. The Target Location is described as a three-story, multi family residence. The residence is composed of a red brick and dark gray shingled siding with white trim. A set of stairs are in the center leading up to two different white doors and the number 200 is hung above the doors. On the right side of the house is maroon door with white storm door. To the left of the stairs is another white door which is ground level. On the left side of the building is a wooden staircase leading up to two other doors. Post Office personnel informed me at the top of the staircase the door on the left is labeled 4 and the door on the right is labeled 5. A photo of the Target Residence is attached as Attachment A.

21. The following "Target Offenses" are the subject of this investigation:

a) Title 21 United States Code (U.S.C.) § 841(a) makes it a crime to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

b) Title 21 U.S.C. § 843(b) makes it unlawful for any person knowingly or intentionally to use any communication facility in committing or causing or

facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For the purpose of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

c) Title 21 U.S.C. § 846 makes it a crime to engage in a conspiracy to commit drug trafficking offenses.

## PROBABLE CAUSE

22. On August 10, 2021, Postal Inspection Service interdiction personnel in Johnstown, PA interdicted the Priority Mail Express parcel bearing USPS tracking EJ 620 408 529 US ("Subject Parcel"), addressed to "Mark Johnson, 200 Southmont blvd apt 5, Johnstown, Pa  15905", with a return address of "Alex Rivera, calle:A #16 jardine Bueala, Vista Carolina, P.R.  00985".  The Subject Parcel is a brown cardboard box measuring 12" x 12" x 12" weighing approximately 7 pounds 5.2 ounces and bearing $93.40 in postage.

23. On August 11, 2021, the Subject Parcel was opened pursuant to federal search warrant docketed at 3:21-141 MJ, signed by the Honorable Keith A. Pesto, United States Magistrate Judge, in the Western District of Pennsylvania.  The parcel contained five bundles of compressed suspected cocaine wrapped in black electrical tape which weighed approximately 130 grams each (See below).



24.　　A narcotics identification test was performed on the suspected cocaine. The suspected cocaine field tested positive for cocaine.

## CONCLUSION

25.　　On or about August 11, 2021, your Affiant, along with additional law enforcement personnel, will attempt to conduct a controlled delivery of the Subject Parcel to 200 Southmont Boulevard, Apartment 5, Johnstown, PA.  If the Subject Parcel is accepted by an occupant of the residence and taken inside, your Affiant is requesting an anticipatory search warrant for the residence be granted.  **The Triggering Event for execution of the anticipatory search warrant will be the Subject Parcel being taken inside the residence at 200 Southmont Boulevard, Apartment 5, Johnstown, PA.**

26.　　If the Triggering Event does not take place, the search warrant will be rendered null and void and will not be executed.

27.　　Upon occurrence of the triggering event, your Affiant believes within 200 Southmont Boulevard, Apartment 5, Johnstown, PA   15905 will be the items described in

Attachment B; specifically, as described above, there will be evidence of illegal possession and distribution of cocaine and other controlled substances, evidence of the illegal trafficking of cocaine using the United States Postal Service, and evidence of drug proceeds; all of which constitute instrumentalities, fruits, and evidence of violations of Title 21 United States Code Sections 841(a)(1) (manufacturing, distribution, or possession with the intent to manufacture or distribute a controlled substance), 843(b) (unlawful use of a communication facility in the commission of a crime) and 846 (drug conspiracy).

28. The above information is true and correct to the best of my knowledge, information and belief.

/s/ *Staci M. Johnson*
U.S. Postal Inspector
U.S. Postal Inspection Service

Sworn and subscribed to me, by telephone,
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 11th day of August, 2021.

_____
HONORABLE KEITH A. PESTO
United States Magistrate Judge